This controversy was begun by a bill of complaint filed by Henrietta P. Shoup in 1920, but her case was settled. In the same year a bill was filed by the complainant Mary S.H. Miller and Clause E. Miller, her husband, and later a bill of similar purport was filed by Jennie S. Sykes and Engene Lanier Sykes. These parties, including the defendant *Page 17 
Walter C. Shoup, are all members of the same family. The controversy arises over the cancellation of the second preferred stock of the Autographic Register Company, in which the active figure was Walter C. Shoup. Henrietta P. Shoup is the mother of Walter and Mrs. Miller and Mrs. Sykes are his sisters. The business of the Autographic Register Company was established by James C. Shoup about 1884 to sell a device invented by him. He was the father of Walter C. Shoup, Mrs. Miller and Mrs. Sykes. Mr. Shoup died on August 14th, 1898. In addition to the children just before mentioned, he left two sons, A. Hardy Shoup, who is not a party to this litigation, and George C. Shoup, now deceased. Mr. Shoup gave practically all the stock of his original corporation to his wife shortly before his demise. On the death of his father his son George continued to manage the business until his death, November 5th, 1908. The concern was originally incorporated in New York, but in 1900 became a New Jersey corporation.
On February 9th, 1910, Mrs. Henrietta P. Shoup and her surviving children entered into a family agreement for the division of the business among the children. Under the terms seventy-five thousand dollars ($75,000) of the first preferred stock of this company was placed in trust, the income to be paid to Henrietta P. Shoup during her life, and after her decease thecorpus to be divided equally between Mary S.H. Miller and Jennie S. Sykes. Likewise, under the terms of this family settlement, Mary S.H. Miller received twenty-five thousand dollars ($25,000) of the second preferred stock, and Jennie S. Sykes received twenty-five thousand dollars ($25,000) of the second preferred stock.
In February, 1915, it being represented that the company was in financial difficulties, both Mary S.H. Miller and Jennie S. Sykes surrendered their second preferred stock for cancellation. The twenty-five thousand dollars ($25,000) of second prefered stock owned by the Millers was sent to Walter C. Shoup on February 9th, 1915, and later the second preferred stock held by the Sykes was sent to him. All this second preferred stock was canceled on the books of the company *Page 18 
in February, 1915. The business of the company was reorganized. The corporate edifice was completely changed. The cancellation of this second preferred stock owned by the complainants effaced the entire issue of second preferred, and common stock has been sold from time to time as appears by the stock book. The common stockholders bought with reliance, that the second prefered stock had been canceled. A decree could not be made to re-establish this second preferred stock without affecting the rights of the common stockholders, but none of them have been made parties to this proceeding.
Walter C. Shoup continued to manage the business under the reorganization, and no demand was made by either of the complainants for any accounting with respect to this second preferred stock, or for any relief whatsoever in reference thereto until 1920, or five years after the event, when the bill above referred to was filed by the mother, Henrietta P. Shoup. I need not review Mrs. Shoup's case. It was settled, and the complainants filed their bills, and, subsequently, proceeded to hearing before me. There was a great amount of testimony taken and the final briefs were not filed until last year. It is asserted by the complainants that they were led to cancel their second preferred stock upon false representations made by their brother, Walter C. Shoup, with respect to the financial condition of the company in February, 1915, and that the company was not in financial straits at that time. To retain the bill I must be satisfied from the evidence that there was no necessity for the cancellation of the second preferred stock, and that the statements made by Walter C. Shoup to his sisters, in respect to the financial condition of the company, were untrue. The testimony offered by the complainant to support their case is not satisfactory, and I think a perusal of the evidence will convince anyone that the company was seriously involved and practically insolvent at the time of the cancellation, and that Walter C. Shoup's representations to his sisters were made in good faith. Shoup at this time had exhausted all his resources; his avenues for raising of money were closed, and *Page 19 
the endorser on his paper in the bank had refused to continue further unless the second preferred stock was canceled. In the middle of January, 1915, Shoup had his final talk with this endorser, George C. Edwards, and was told that something must be done to solve the situation. He then consulted with Mr. Justice P. Sheffield, and, at Mr. Sheffield's suggestions, it was decided to apply for a receiver, and the firm of McCarter English was named to file a bill for this purpose. Shoup had to move speedily to save the situation, for it is clear that he was in great financial distress, but I cannot say that, in procuring his sisters' stock, he was dishonest with them. There was no promise on his part to do anything with respect to the second preferred stock which they owned except to cancel it. A perusal of the testimony of the Millers and Sykes must lead one to the conclusion that they were not deceived as to the situation, and there was ample time afforded them to refuse Shoup's proposition if they did not regard it as advantageous. All complainants had due notice of the meeting when the stock was canceled, and they were not left in the dark on any matter connected with the transaction. They knew that it was the life of the company that was at stake, and the fact that it has prospered since they gave up the stock does not give them any right, because of their prior holdings, to participate now. The prosperity which has come to the company since the event may in some measure be attributed to the effect of the great war on business generally, but it is not necessary to dwell on this phase of the case. Of course, the success of the company may be assigned as one cause for this tardy litigation, and not the alleged misrepresentations of Walter C. Shoup.
Another motive which may have induced the complainants to proceed against their brother at this late day was this Walter remarried in October, 1920, and it was not until this occurrence in the same month that Mrs. Henrietta P. Shoup retained counsel in the present proceedings. This is rather significant, as it must have occurred to Mrs. Shoup and her daughters that the money might go out of the family. *Page 20 
A fact of moment in connection with this litigation, and one which it is important to consider in disposing of it, is, that although Mrs. Miller and Mrs. Sykes lost their second preferred stock, they, nevertheless, were benefited by the reorganization of the company and its accompanying success. If the company had gone into the hands of the receiver the first preferred stock could not have been paid, and in this stock they both have an interest as the daughters of Mrs. Henrietta P. Shoup. Under the family agreement, upon the death of their mother, Mrs. Miller and Mrs. Sykes each gets one-half of the first preferred stock. This must have been a strong inducement for cancellation if the true situation of the company was apparent to them, as I believe it was.
The bills must be dismissed.